[Cite as *Bierleinl v. Grandview Hts. Bd. of Zoning Appeals*, 2020-Ohio-1395.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Matthew Bierlein et al., :

         Appellants-Appellants, :

                           No. 18AP-874

v. : (C.P.C. No. 17CV-5071)

Grandview Heights Board of Zoning : (REGULAR CALENDAR)
Appeals City of Grandview Heights,
Ohio, :

         Appellee-Appellee. :

D E C I S I O N

Rendered on April 9, 2020

**On brief**: *Matthew Bierlein*, pro se. **Argued**: *Matthew Bierlein*.

**On brief**: *Laura MacGregor Comek Law*, *Laura M. Comek* and *Tracy L. Bradford*, for appellee. **Argued**: *Laura M. Comek*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Appellants, Matthew and Jennifer Bierlein, appeal from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Grandview Heights Board of Zoning Appeals ("BZA"). For the reasons which follow, we affirm the judgment of the common pleas court.

{¶ 2} Appellants own real property located at 1278 West 1st Avenue in the city of Grandview Heights, Ohio. The structures on the property include a single-family home constructed in 1923 and a detached two-story garage constructed in 1989. Appellants purchased the property in 2012.

{¶ 3}    On March 2, 2017, appellants filed an application for a building permit with the city's Director of Building and Zoning ("Director").  Appellants sought a permit to add a full bathroom to the second floor of their garage.  Appellants also filed a memorandum in support of their permit application.

{¶ 4}    Appellants noted in the memorandum that the second floor of their garage was "separated from the first floor via an interior wall and door. The second floor and a portion of the first floor are conditioned with HVAC." (Mar. 2, 2017 Memo at 1.)  Appellants asserted the city's zoning code allowed for the addition of a bathroom to a garage so long as the improvements did not create a dwelling unit.  Appellants noted that, while a dwelling unit required permanent provisions for sleeping, cooking, and sanitation, their proposed improvements would "only provide for an area for sleeping and for sanitation." (Mar. 2, 2017 Memo at 2.)  Alternatively, appellants asserted the HVAC system made their garage a permissible non-conforming use, and that they were entitled to add the bathroom to the garage "as a continuation of the non-conforming use of the building."  (Mar. 2, 2017 Memo at 4.)

{¶ 5}    On March 28, 2017, appellants filed a request for zoning interpretation and a statement of reason with the BZA.  Appellants explained in their statement of reason that the Director informed them on March 23, 2017 that their permit "application was 'on hold' and that [appellants] could take the matter to the BZA."  Appellants informed the BZA that they sought to convert "the second floor of the garage into an in-law suite with a bathroom, for use by out-of-town family and guests." (Statement of Reason at 1.)  Appellants reiterated they were entitled to make their proposed improvements as a matter of right under the zoning code, or that alternatively the proposed improvements were permissible as a continuation of a non-conforming use of the garage.  The BZA notified appellants their case would be heard at their April 12, 2017 meeting.

{¶ 6}    At the April 12, 2017 meeting, the Director presented BZA's staff report on appellants' case to the BZA.  The staff report noted that appellants' garage "was properly permitted as a detached accessory garage structure in 1989."  As the city had "no records of any other permitted work for the accessory garage structure," the staff report concluded the "garage conversion work" to add the HVAC system appeared "to have been accomplished without proper permits and approvals."  The staff report explained the addition of a full bathroom "to create an in-law suite for sleeping and bathing" in the garage would "create

in essence two single family dwellings on one lot" in violation of the city's zoning code. (BZA Staff Report at 2-3.)

{¶ 7} Mr. Bierlein informed the BZA at the meeting that appellants sought to add the bathroom to the second floor of their garage to create a "quiet space for in-laws" to stay when they came to visit. (Hearing Tr. at 14.) Appellants argued that their proposed in-law suite was permissible as it would not contain a kitchen and, therefore, would not constitute a dwelling unit. BZA member Kristen Dickerson argued that appellants' improvements would create a dwelling unit, as appellants' "intent [was to use their garage] as a separate living quarter." (Hearing Tr. at 22.) The Director noted that accessory structures in the city had to be uninhabitable and explained the city's residential housing code defined habitable space as "a space in a building for living, sleeping, eating or cooking." Because appellants' guests would sleep in the proposed in-law suite, the Director asserted that appellants would have people "living in that space" in violation of the zoning code. (Hearing Tr. at 19.)

{¶ 8} Mr. Bierlein further noted that as the garage was "an existing non-conforming structure" with an HVAC system, adding a "bathroom [would not] change the use" of the structure. (Hearing Tr. at 14.) Acting Chairman of the BZA, Markus Bonn, noted that the bathroom would "change the use of that space" as it would allow someone "to inhabit it." (Hearing Tr. at 26.) The Director noted that the "garage itself was built in '89, and it was built as a garage as uninhabitable." Thus, the Director asserted that "[i]f there's no record of a permit for that conversion" to add the HVAC system, "the city's point is that it's always a garage, so it remains that way." (Hearing Tr. at 18.)

{¶ 9} At the end of the hearing on appellants' case, BZA member Dickerson made the following motion:

> [T]o uphold the determination of the Director * * * relating to Zoning Code Section 1139.04(a) – and Sections 1153.02(b), 1153.02(f), 1133.02(1), 1133.02(2), 1133.02(31). The structure is an accessory garage; it is not a non-conforming use. It is not a matter of right. It would constitute a dwelling unit with living quarters if approved. Zoning Code Sections cited does not allow conversion into a dwelling unit or to be modified to add an existing bathroom.

(Apr. 12, 2017 BZA Meeting Minutes at 5.)

{¶ 10} The BZA members all voted to approve the motion. Appellants appealed the BZA's decision to the common pleas court.

{¶ 11} On September 15, 2017, appellants filed a brief in the common pleas court. Appellants initially asserted the BZA lacked jurisdiction to consider their appeal as the Director had neither approved nor rejected their application for a building permit. Rather, appellants noted the Director had put their application on hold. Appellants further asserted the BZA's decision was legally incorrect because their proposed improvements would not create a dwelling unit. Appellants alleged that the proceedings before the BZA failed to comport with due process, and that the BZA failed to conduct an appropriate inquiry to determine whether their garage was a non-conforming use. Appellants asserted the BZA's non-conforming use determination could subject them to various sanctions as their garage was in excess of the zoning code's size standards for accessory structures.

{¶ 12} The BZA filed a brief responding to appellants' contentions on October 2, 2017. The BZA noted that appellants' proposed improvements were not permissible, as the city's zoning code did not permit people to live in garages. The BZA further noted that appellants did not present any evidence to support their non-conforming use contention, and that appellants' "assumption" that their garage was a non-conforming size "was never proven." (BZA's Trial Brief at 10.) Appellants filed a reply brief on October 9, 2017.

{¶ 13} On October 19, 2018, the common pleas court issued a decision and judgment entry affirming the BZA's decision. The court held that the BZA had jurisdiction to hear appellants' appeal and concluded the city's zoning code did not permit appellants to add a bathroom to their garage. The court concluded appellants' proposed improvements would create a dwelling unit as appellants intended to use their garage "as separate living quarters for visitors," and stated that the garage did not need to "have a kitchen to constitute a 'dwelling unit.' " (Decision at 7-8.) The court further held that, even if appellants' proposed improvements would not create a dwelling unit, "the use of the garage as an in-law suite [was] prohibited by City Ord. 1153.02(f)." (Decision at 8.) The court concluded appellants alleged due process violations lacked merit. The court noted that, as "the only permit on file relating to the Property's garage was issued in 1989 for the construction of an uninhabitable garage," there was "no evidence on which the BZA could have concluded that the garage ha[d] an existing (lawful) non-conforming use." (Decision at 9-10.) The court observed that the BZA determined whether the garage had "an existing non-conforming 'use' but did not decide whether the garage [was] also a non-conforming 'size.' " (Decision at 10.)

{¶ 14} Appellants appeal, presenting the following three assignments of error for our review:

> [I.] The Trial Court erred as a matter of law when it ruled that Appellants could not construct the proposed improvements to their garage as a matter of right under the zoning ordinance.
>
> [II.] The trial court erred as a matter of law in determining that the board of zoning appeals' handling of the appeal of Appellants' building permit application and Appellants' request for determination of nonconforming use did not violate Appellants' due process rights.
>
> [III.] The trial court erred as a matter of law when it failed to consider the whole record when determining whether there existed a preponderance of reliable, probative, and substantial evidence to support the board of zoning appeals' decision.

{¶ 15} R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 22. When presented with an R.C. Chapter 2506 administrative appeal, the common pleas court must consider the "whole record" to determine whether the administrative "order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04. While the common pleas court may not " 'blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise,' " the court "is charged with 'weigh[ing] the evidence in the record * * * to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision.' " *Cooper State Bank v. Columbus*, 10th Dist. No. 14AP-414, 2015-Ohio-2533, ¶ 16, quoting *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 207 (1979).

{¶ 16} "The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is '*more limited* in scope.' " (Emphasis sic.) *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000), quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). R.C. 2506.04 grants an appellate court the authority "to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative

evidence' as is granted to the common pleas court." *Id.*, quoting *Kisil* at fn. 4. However, "[w]hether a trial court abused its discretion is within the ambit of 'questions of law' for appellate court review in administrative appeals under R.C. 2506.04." *Cooper State Bank* at ¶ 17, citing *Henley* at 148. Thus, the appellate court must determine " 'whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence.' " *Cross Country Inns, Inc. v. Westerville*, 10th Dist. No. 02AP-410, 2003-Ohio-3297, ¶ 22, quoting *Ashland v. Gene's Citgo*, 10th Dist. No. 99AP-938 (Apr. 20, 2000).

{¶ 17} Initially, although not raised by either party on appeal, we feel compelled to address the BZA's jurisdiction in the present case. "An administrative agency, such as the [BZA], that is created by a legislative body is limited to exercise only such authority granted to it by the legislative body." *Banks v. Upper Arlington*, 10th Dist. No. 03AP-656, 2004-Ohio-3307, ¶ 17, citing *State ex rel. Shaker Square Co. v. Guion*, 76 Ohio Law Abs. 524 (1957). Thus, "an administrative agency given the authority to hear appeals may only act within the jurisdiction delineated by statute or code language." *Id. Accord Cuyahoga Cty. Bd. of Cty. Commrs. v. Daroczy*, 10th Dist. No. 08AP-123, 2008-Ohio-5564, ¶ 17. However, "statutes providing for appeals should be given a liberal interpretation in favor of appeal." *Waltco Truck Equip. Co. v. Tallmadge Bd. of Zoning Appeals*, 40 Ohio St.3d 41, 42 (1988), citing *Van Meter v. Segul-Schadel Co.*, 5 Ohio St.2d 185 (1966), paragraph one of the syllabus.

{¶ 18} The city's zoning code provides that the Director shall examine applications for a building permit and either "approve such application and issue a permit" or "reject such application." Grandview Heights Ordinance ("G.H.O.") 1137.06. The Director did not approve or reject appellants' permit application. Instead, the Director informed appellants in a March 23, 2017 e-mail that their application was being put on hold due to non-compliance with the following zoning code provisions: G.H.O. 1133.02(31), 1133.02(1), 1133.02(2), and 1153.02(f). The zoning code provisions noted by the Director define dwellings and accessory structures.

{¶ 19} The BZA has authority to "hear and decide appeals where it is alleged there is an error in order, requirement, decision or determination made by the Director * * * in the enforcement of the Zoning Ordinance in residential districts." G.H.O. 1139.04(a). Thus, the BZA's jurisdiction is not limited to reviewing the Director's decisions approving or rejecting

permit applications. Rather, G.H.O. 1139.04(a) broadly permits the BZA to review any decision or determination made by the Director in the enforcement of the zoning ordinance in the city's residential districts. Appellants' property is located in the city's residential "RS-2" zoning district. The Director's decision to place appellants' permit application on hold was based on the Director's determination that appellants' proposed improvements did not comply with the zoning code requirements applicable to accessory structures. As such, G.H.O. 1139.04(a) authorized the BZA to review the Director's decision. Indeed, the BZA voted to uphold the "determination of the Director" regarding the relevant zoning code provisions. (Apr. 12, 2017 BZA Meeting Minutes at 5.)

{¶ 20} G.H.O. 1153.03(g) provides that "[w]hether a nonconforming use exists shall be a question of fact and shall be decided by the Board of Zoning Appeals after public notice and hearing." Accordingly, the BZA had jurisdiction over both aspects of appellants' case.

{¶ 21} Appellants' first assignment of error asserts the common pleas court erred in ruling that the zoning code did not permit appellants to make their proposed improvements as a matter of right. Appellants contend that because they will add a bathroom, but no kitchen, to their garage the improvements are permissible as they will not create a dwelling unit.

{¶ 22} "Interpretation of a zoning ordinance raises a question of law within the court of appeals' limited review in an R.C. 2506.04 appeal." *JP Morgan Chase Bank, Inc. v. Dublin*, 10th Dist. No. 10AP-965, 2011-Ohio-3823, ¶ 11. *See Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12 (noting that "[a] question of statutory construction presents an issue of law that we determine de novo on appeal"). A court should give the words in a zoning regulation the meaning commonly attributed to them unless a contrary intention appears in the regulation. *State ex rel. Bailey v. Madison*, 10th Dist. No. 12AP-284, 2012-Ohio-4950, ¶ 7, citing *Akwen, Ltd. v. Ravenna Zoning Bd. of Appeals*, 11th Dist. No. 2001-P-0029 (Mar. 29, 2002). Indeed, the primary goal of statutory interpretation is to give effect to the intent of the enacting body. *Christie v. GMS Mgt. Co.*, 88 Ohio St.3d 376, 377 (2000). A zoning provision must not be viewed in isolation; "rather, its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.' " *Cleveland Clinic Found.* at ¶ 35, quoting *Henley* at 152.

{¶ 23} When an ordinance is unambiguous and conveys a clear meaning, a court must only read and follow the words of the ordinance. *Bailey* at ¶ 8. *Accord Banks* at ¶ 29 (stating that "a court must adhere to the plain language of the statute or ordinance unless an ambiguity exists"). If ambiguity exists, "courts must strictly construe restrictions on the use of real property in favor of the property owner." *Bailey* at ¶ 7, citing *Allen v. Cty. Bd. of Zoning Appeals*, 186 Ohio App.3d 196, 2010-Ohio-377, ¶ 16 (2d Dist.). However, "there is no need to strictly construe an ordinance that has a definite meaning." *Banks* at ¶ 33, citing *Doersam v. Gahanna*, 10th Dist. No. 96APF12-1766 (Sept. 30, 1997).

{¶ 24} The city has adopted a planning and zoning code, contained in Part Eleven Titles Three and Five of the city's codified ordinances. G.H.O. 1131.01. Permitted uses of property in the RS-2 zoning district include "single-family dwelling[s]" and "[a]ccessory uses and structures in association with permitted dwellings." G.H.O. 1155.01(a)(1) and (4); 1155.02(a). Two-family dwellings are permitted in the RS-2 district only with prior approval from the city's planning commission. G.H.O. 1153.01(h); 1155.02(b).

{¶ 25} The zoning code provides that an accessory use or structure "shall only be permitted in association with a principal use or structure within the City when the following requirements are met: * * * [i]t shall not contain or be used as a dwelling unit." G.H.O. 1153.02(b). A "[d]welling unit" is defined as "one or more rooms in a dwelling occupied or intended to be occupied as separate living quarters by a single family." G.H.O. 1133.02(36). A "[d]welling" is defined as "any building or portion thereof which is designed and used exclusively for residential purposes with permanent provisions for sleeping, cooking and sanitation." G.H.O. 1133.02(31).

{¶ 26} As a dwelling unit is defined as rooms "in a dwelling," the dwelling unit definition incorporates the definition of a dwelling. Accordingly, a dwelling unit consists of one or more rooms in a residential building or portion thereof with permanent provisions for sleeping, cooking, and sanitation, which is occupied or intended to be occupied as separate living quarters by a single family. *See also* G.H.O. 1133.02(32) (defining a "dwelling, single-family" as a "building arranged or designed for or occupied exclusively by one family"); G.H.O. 1133.02(33) (defining a "[d]welling, two-family" as a "dwelling arranged or designed for or occupied exclusively by two families, the structure having only two dwelling units with separate entrances"); G.H.O. 1133.02(7) (defining an "apartment" by stating "[s]ee 'dwelling unit' "). The plain language of the zoning code requires that a

dwelling unit contain permanent provisions for sleeping, cooking, and sanitation. As appellants do not intend to add a kitchen to their garage, their proposed improvements will not create a dwelling unit.

{¶ 27} However, the zoning code defines an "accessory structure" as a "subordinate, uninhabitable structure, the use of which is incidental to and customary in connection with the principal building or use and which is located on the same lot with same principal building or use." G.H.O. 1133.02(1). Thus, as an accessory structure, a garage must be uninhabitable. The zoning code does not define the term "uninhabitable." Any word not defined in the zoning code "shall be as defined in any recognized standard English dictionary." G.H.O. 1133.01. "Uninhabitable" is defined as "unsuitable for living in." *New Oxford American Dictionary* 1890 (3d Ed.2010). "Uninhabitable" is also defined as the opposite of "habitable," which is defined as "capable of being lived in: suitable for habitation." *Merriam-Webster's Collegiate Dictionary* 559, 1358-59 (11th Ed.2014).

{¶ 28} Appellants contend the term "uninhabitable structure" in G.H.O. 1133.02(1) essentially restates the G.H.O. 1153.02(b) prohibition against "the use of an accessory structure as a dwelling unit." (Appellants' Brief at 34.) In considering statutory language, it is the duty of the court to give effect to the words used in a statute, not to delete words used or insert words not used. *Cleveland Elec. Illum Co. v. Cleveland*, 37 Ohio St.3d 50 (1988), paragraph three of the syllabus.

{¶ 29} Whether a structure is habitable or uninhabitable concerns whether the structure is suitable for living in. A structure may be suitable for living even if it does not contain the elements necessary to constitute a dwelling unit. For instance, a hotel room consisting of a bed and a bathroom is a habitable space for transient guests. *See* G.H.O. 1133.02(53) (defining a "hotel" as a building containing "guest rooms kept, used, maintained or held out to the public as sleeping accommodations offered for pay to transient guests for a period of thirty (30) days or less"). Indeed, a structure may be suitable for living even if its occupants will only live in the structure for short durations. As appellants intend to add a full bathroom to the second floor of their garage to create an in-law suite, appellants' proposed improvements would turn their garage into a habitable structure.

{¶ 30} Furthermore, G.H.O. 1153.02(f) provides that in the city's residential zoning districts "accessory structure and uses are limited to: tennis court, basketball court,

playground structures, hot tub, gazebo, swimming pool, garden house, garage, carport, pergola, barbecue oven, fireplace, ground level patio, detached ground level deck, greenhouse and similar uses customarily accessory to residential uses." The enclosed accessory structures identified in G.H.O. 1153.02(f) are all storage-type accessory structures. *See Henley* at 150 (noting that a zoning code provision defining accessory structures as including sheds, garages, and greenhouses presented a "list of structurally similar storage- or workshop-type buildings").

{¶ 31} Accordingly, an accessory structure used for people to stay in, such as an in-law suite, is not a use similar to the permissible accessory structures identified in G.H.O. 1153.02(f). *See Thomas v. Freeman*, 79 Ohio St.3d 221, 224 (1997) (holding that "[*e*]*xpressio unius est esclusio alterius* means that 'the expression of one thing is the exclusion of the other' "); *New Albany Park Condominium Assn. v. Lifestyle Communities, LTD*, 195 Ohio App.3d 459, 2011-Ohio-2806, ¶ 24 (10th Dist.); *1476 Davenport Ave. v. Cleveland*, 8th Dist. No. 74810 (Nov. 10, 1999) (observing that as "hotels" were not listed in the zoning code definition of "multiple dwelling" the "doctrine of *expressio unius est exclusion alterius* applie[d]"). (Emphasis sic.) *Compare Village of Grand River v. G.B.K.G.*, 11th Dist. No. 2003-L-118, 2004-Ohio-5627, ¶ 25-32 (city's zoning code specifically allowing for in-law suites as an auxiliary use of a single-family residence). Accordingly, G.H.O. 1153.02(f) demonstrates that accessory structures intended for even temporary over-night occupancy by individuals were purposefully omitted from the list of permitted uses in the RS-2 zoning district.

{¶ 32} Thus, appellants were not entitled to make their proposed improvements as a matter of right under the city's zoning code.[1] Although the common pleas court held appellants' proposed improvements would create a dwelling unit in their garage, we must affirm the court's judgment because it is legally correct on other grounds. *Hassey v. Columbus*, 10th Dist. No. 17AP-726, 2018-Ohio-3958, ¶ 33, quoting *Reynolds v. Budzik*, 134 Ohio App.3d 844, 846 (6th Dist.1999) (observing that " 'when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason,

---

[1] Appellants never attempted to seek a variance from the requirements of the zoning code. *See Budget Car Sales v. Groveport Bd. of Zoning Appeals*, 10th Dist. No. 01AP-932, 2002-Ohio-2809, ¶ 7, citing *Nunamaker v. Bd. of Zoning Appeals*, 2 Ohio St.3d 115, 118 (1982) (explaining that "[a] variance authorizes a landowner to establish or maintain a use which is prohibited by zoning regulations").

because such an error is not prejudicial' "). The common pleas court correctly held that the use of a garage as an in-law suite was prohibited by G.H.O. 1153.02(f).

{¶ 33} Based on the foregoing, appellants' first assignment of error is overruled.

{¶ 34} Appellants' second assignment of error asserts the common pleas court erred in determining that the proceedings before the BZA did not violate appellants' due process rights.

{¶ 35} "Due process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings." *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 24. Due process " 'is a flexible concept and calls for such procedural safeguards as the particular situation demands.' " *Id.*, quoting *LTV Steel Co. v. Indus. Comm.,* 140 Ohio App.3d 680, 688 (10th Dist.2000). The fundamental requirement of procedural due process is "notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988). "The issue of * * * procedural due process relating to the [agency's] hearing is a question of law." *Planet Earth Entertainment v. Ohio Liquor Control Comm.*, 125 Ohio App.3d 619, 622 (10th Dist.1998).

{¶ 36} Appellants initially assert the BZA proceedings failed to comport with due process because appellants "were not provided the Staff Report in advance of the hearing and the BZA Notice indicated solely an 'appeal' – Appellants were unsure that the determination of nonconforming use would even be considered at the BZA Hearing." (Appellant's Brief at 41.) Appellants fail to identify any rule demonstrating they were entitled to receive the BZA's staff report prior to the hearing. Appellants were aware of the facts of the case and were able to research all the issues addressed in the staff report.

{¶ 37} The BZA notified appellants that their case would be heard at the April 12, 2017 meeting by sending appellants a copy of the meeting agenda. The agenda identified appellants' names and case number and gave the following description of the case: "The Applicant is seeking to appeal the determination of the Director * * * relating to Zoning Code Section 1139.04(a) – and Sections 1153.02(b), 1153.02(f), 1133.02(1), 1133.02(2), 1133.02(31). The applicant is proposing to add a full bathroom to an existing detached accessory garage to create an in-law suite." (Apr. 12, 2017 Meeting Agenda.) Due process requires that litigants receive " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Ohio Valley Radiology Assocs. v. Ohio Valley Hospital Assn.*,

28 Ohio St.3d 118, 124-25 (1986), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

{¶ 38} Although the meeting agenda did not note appellants' non-conforming use argument, appellants raised their non-conforming use argument in the documents they filed with the BZA. By placing appellants' case on the April 12, 2017 meeting agenda, the BZA provided appellants with sufficient notice of their opportunity to present any objections they had to the BZA, including their contentions regarding the alleged non-conforming use of their property. *Compare Rizzo-Lortz v. Erie Ins. Group*, 10th Dist. No. 17AP-623, 2019-Ohio-2133, ¶ 13 (noting that although due process "demands that litigants receive some form of reasonable notice of hearings," the notice "need not be actual notice," and "[i]n the absence of a court rule mandating that actual notice occur, ' "due process is satisfied where the trial court sets a case down on its docket for hearing, since the parties or their attorneys are expected to keep themselves advised of the progress of their cases" ' "). *Id.*, quoting *Yoder v. Thorpe*, 10th Dist. No. 07AP-225, 2007-Ohio-5866, ¶ 13, quoting *Metcalf v. Ohio State Univ. Hosp.*, 2 Ohio App.3d 166, 168 (10th Dist.1981). Appellants fail to demonstrate a due process violation resulting from the description of their case on the meeting agenda.

{¶ 39} Appellants contend the BZA violated their right to due process by failing to conduct a meaningful inquiry to determine whether their garage was a lawful non-conforming use.  The zoning code provides that the "lawful use of a building" existing at the effective date of G.H.O. 1153.03 "may be continued although such use does not conform to the provisions hereof." G.H.O. 1153.03(b).[2] If a building has a lawful non-conforming use and no significant structural alterations are made to the building, "a nonconforming use of a building may be changed to another nonconforming use of the same or of a more restricted classification." G.H.O. 1153.03(b). *Accord* R.C. 713.15. However, an "illegal nonconforming use" under the terms of a prior zoning ordinance "shall not automatically become a legal nonconforming use by the adoption of [the city's current] Zoning Ordinance." G.H.O. 1153.03(h).

{¶ 40} Thus, "[a] non-conforming use of land is a use that was lawful before the enactment of a zoning amendment, but one which, although no longer valid under the

---

[2] G.H.O. 1153.03(b) indicates that it became effective September 8, 1998.

current zoning rules, may be lawfully continued." *Bailey* at ¶ 14, citing *Wooster v. Entertainment One, Inc.*, 158 Ohio App.3d 161, 2004-Ohio-3846, ¶ 45 (9th Dist.). " 'The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution recognize a right to continue a given use of real property if such use is already in existence at the time of the enactment of a land use regulation forbidding or restricting the land use in question.' " *Id.*, quoting *Wooster* at ¶ 45.

{¶ 41} Appellants contend that the BZA failed to "consider[] the evidence necessary" to determine whether their garage was a legal non-conforming use, because the BZA failed "to review the old Zoning Ordinance in effect in 1989" and failed to review the "1989 permit records relating to the garage." (Appellant's Brief at 44, 45.) However, appellants failed to present such evidence to the BZA.

{¶ 42} "The burden of proof to establish a non-conforming use is on the landowner." *Bailey* at ¶ 15, citing *State v. Teachout*, 11th Dist. No. 2004-T-0129, 2005-Ohio-5119, ¶ 13. *Accord Columbus v. Reiner*, 10th Dist. No. 16AP-513, 2018-Ohio-975, ¶ 24. To demonstrate a lawful non-conforming use, a landowner must establish the following two requirements: (1) that the use was "in existence prior to the enactment of the prohibitory land use regulation," and (2) that "the land use in question was lawful at the time the use was established." *Id.* at ¶ 15, citing *Barnes v. Koon*, 5th Dist. No. 08-CA-14, 2009-Ohio-277, ¶ 17. "Stated another way, the use in question must have been in full conformance with all applicable land use regulations in effect when the activity was begun." *Dublin v. Finkes*, 83 Ohio App.3d 687, 690 (10th Dist.1992). *Accord Pschesang v. Terrace Park*, 5 Ohio St.3d 47 (1983), syllabus (holding that "[a] use of property must be lawful at the time the use was established in order to qualify as a nonconforming use").

{¶ 43} As the city had a permit for the construction of the garage in 1989 but had no permit for the addition of the HVAC system to the garage, the Director testified the city's position was that the structure was "an uninhabitable garage." (Hearing Tr. at 20.) *See* G.H.O. 1137.01(a) (providing that no person shall construct or alter a structure without first receiving a permit from the Director). The Director invited appellants to produce evidence demonstrating otherwise, noting "[i]f we can find documentation that shows that they had approvals to convert [the garage], that's a different story." (Hearing Tr. at 18.)

{¶ 44} Appellants did not produce any evidence to demonstrate when the HVAC was installed in the garage and, thus, failed to establish the HVAC system complied with all

applicable zoning regulations when it was installed. The mere existence of the HVAC system in the garage when appellants purchased the property did not establish the garage had a lawful non-conforming use. *Compare Pschesang* at 49 (noting that a purchaser of land has "the responsibility to check the compatibility of the zoning restrictions and his intended uses"). Accordingly, appellants failed to carry their burden of proof to establish a lawful non-conforming use. *See Bailey* at ¶ 19 (concluding the landowner failed to satisfy her burden of proof to establish a lawful non-conforming use where the evidence "was unclear as to precisely when the commercial vehicles had been stored on the property" and "appellant failed to show that the storage of commercial vehicles was lawful in the applicable zoning district prior to [the] 1996" zoning resolution); *Martin v. Cleveland*, 8th Dist. No. 75405 (Apr. 20, 2000) (holding that the landowner failed to establish a lawful non-conforming use where the landowner argued that "his property was 'always' used for outdoor storage," but the prior zoning ordinances required that outdoor storage be enclosed by a wall, and the landowner "offered no evidence" to demonstrate that "any of the prior owners of the property" had ever complied with this zoning requirement).

{¶ 45} Nevertheless, appellants assert the BZA's non-conforming use decision was deficient because the Director failed to introduce the 1989 garage permit at the BZA meeting,[3] in violation of Evid.R. 1002. The Rules of Evidence do not apply in administrative hearings and, thus, Evid.R. 1002 did not obligate the Director to introduce the permit. *MNH Truck Leasing Co., LLC v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-301, 2017-Ohio-442, ¶ 12 (noting that "administrative agencies are not bound by the strict rules of evidence applied in court"). Moreover, the common pleas court concluded that the Director's testimony regarding the 1989 permit was credible, given the Director's position as a "City employee[]" and his "expertise in the area." (Decision at 9.) We find no abuse of discretion in the common pleas court's assessment of the Director's credibility. *See Orange Barrel Media v. Columbus*, 10th Dist. No. 12AP-447, 2012-Ohio-6205, ¶ 8 (noting

---

[3] Although appellants state that the 1989 garage permit was not submitted into the record at the April 12, 2017 BZA meeting, the permit is contained in the official record of proceedings transmitted from the BZA to the common pleas court. Appellants admit that they received a copy of the 1989 permit after the meeting. The 1989 permit consists of a ledger sheet listing permits issued in 1988 and 1989 to properties located on West 1st Avenue The ledger sheet notes that house number 1278 received a permit for a "new garage" in 1989. (1989 Permit Ledger.) The ledger sheet demonstrates that permits for furnaces were issued to other properties on West 1st Avenue, but there is no indication that house number 1278 received a permit for a furnace during these years.

that in an R.C. Chapter 2506 appeal, the common pleas court must appraise all such evidence as to the credibility of the witnesses).

{¶ 46} Appellants state that because their "garage is over the size limitation currently set by the Zoning Ordinance," the BZA's non-conforming use decision has exposed them to possible criminal penalties. (Appellant's' Brief at 48.) *See* G.H.O. 1135.99(b) (providing criminal penalties for zoning code violations); G.H.O. 1153.02(a) (providing size limitations for accessory structures). Appellants' fears about the potential implications of the BZA's decision are unfounded. The BZA's ruling addressed whether appellants' garage was a non-conforming use because the garage had an HVAC system. The BZA never made any finding regarding the alleged non-conforming size of appellants' garage.

{¶ 47} Appellants further assert they were deprived of due process because the BZA did not have rules or procedures describing how the BZA would rule on appellants' appeal or the non-conforming use issue. However, G.H.O. 1139.04(a) provided that the BZA would review the Director's decisions made in the enforcement of the zoning code for error, and G.H.O. 1153.03(b) provided that the BZA would determine whether an alleged non-conforming use was lawful at the effective date of G.H.O. 1153.03. Thus, the zoning code contained the standards the BZA would use to review appellants' case.

{¶ 48} Appellants finally contend that they were deprived of due process because the BZA impermissibly relied on definitions from the city's residential house code. Appellants note that G.H.O. 1133.01 obligated the BZA to use dictionary definitions to define any word not otherwise defined in the zoning code. In our analysis of appellants' first assignment of error, we utilized the dictionary definition of "uninhabitable" to conclude that appellants were not entitled to make their proposed improvements. Accordingly, to the extent the BZA relied on any definition from the residential housing code, such reliance was harmless error.

{¶ 49} The common pleas court did not err in rejecting appellants' various due process arguments. Appellants' second assignment of error is overruled.

{¶ 50} Appellants' third assignment of error asserts the common pleas court failed to consider the whole record in rendering its decision. R.C. 2506.04 obligates a common pleas court to review the "whole record" to determine whether an agency's decision is supported by a preponderance of substantial, reliable, and probative evidence. *See Athenry*

*Shoppers, Ltd. v. Planning & Zoning Comm. of Dublin*, 10th Dist. No. 08AP-742, 2009-Ohio-2230, ¶ 22 (observing the common pleas court failed to comply with the R.C. 2506.04 standard of review because the court failed to consider a particular witnesses' testimony).

{¶ 51} Appellants fail to point to any evidence in the record that the common pleas court allegedly failed to consider. Rather, in their third assignment of error, appellants attempt to rehash the arguments they made in their second assignment of error. We have already addressed and rejected these arguments in our analysis of appellants' second assignment of error.

{¶ 52} The record demonstrates the common pleas court considered the whole record to determine the BZA's decision was supported by a preponderance of substantial, reliable, and probative evidence. Appellants' third assignment of error is overruled.

{¶ 53} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

_____