[Cite as *Turner v. Bexley Bd. of Zoning & Planning*, 2023-Ohio-3225.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Leah Turner, | : | |
| Appellant-Appellee, | : | Nos. 22AP-554 |
| | | and |
| v. | : | 22AP-562 |
| | | (C.P.C. No. 22CV-878) |
| City of Bexley Board of Zoning and Planning et al., | : | |
| | : | (REGULAR CALENDAR) |
| Appellees-Appellants. | : | |
| | : | |

D E C I S I O N

Rendered on September 12, 2023

**On brief:** *Loveland Law*, *LLC*, and *Bryan S. Hunt*, for appellee Leah Turner. **Argued:** *Bryan S. Hunt*.

**On brief:** *Kegler*, *Brown*, *Hill & Ritter Co.*, *LPA* and *Catherine A. Cunningham, Fishel Downey Albrecht & Riepenhoff LLP*, and *Marc A. Fishel*, co-counsel for appellants City of Bexley Board of Zoning and Planning, City of Bexley City Council, and City of Bexley. **Argued:** *Catherine A. Cunningham*.

**On brief:** *Vorys*, *Sater*, *Seymour and Pease LLP*, *Joseph R. Miller*, *Christopher L. Ingram*, *Elizabeth S. Alexander*, and *Jordan C. Patterson, Underhill & Hodge LLC*, *Aaron L. Underhill*, and *David Hodge*, co-counsel for appellant The Community Builders, Inc. **Argued:** *Joseph R. Miller*.

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, P.J.

{¶ 1} Appellees-appellants, the City of Bexley, the City of Bexley Board of Zoning and Planning ("BZAP"), the City of Bexley City Council, and The Community Builders, Inc., appeal the judgments of the Franklin County Court of Common Pleas reversing a decision

of the City Council, which affirmed a decision of the BZAP to grant The Community Builders, Inc. conditional use application.  For the following reasons, we affirm the trial court's judgment.

{¶ 2}   The Bexley zoning code lists permitted uses and conditional uses allowed in each of the City's zoning districts.  Pursuant to the Bexley zoning code, a permitted use "may be lawfully established in a particular district or districts provided it conforms to all requirements, regulations, and standards of such district."  Bexley Codified Ordinances 1230.92 (hereinafter "B.C.O.").  A "conditional use" is "a use that, because of special requirements or characteristics, may be allowed in a particular zoning district only after review by Board of Zoning and Planning, and granting of conditional use approval imposing such conditions as necessary to make the use compatible with other uses permitted in the same zone or vicinity."  B.C.O. 1230.89.  BZAP may approve an application for a conditional use "if, and only if, [the proposed use] meets the intent of [the] Zoning Code and the intent of the zoning district in which the property is located, fits harmoniously with adjacent uses and structures and complies with all other provisions of [the] Zoning Code."  B.C.O. 1226.12.

{¶ 3}   The Community Builders, Inc. intends to develop a three-story building containing 27 apartment units in the City of Bexley.  The location where The Community Builders, Inc. proposes to build the new apartment building—2300 East Livingston Avenue—is in an area of Bexley zoned as the Commercial Service District.  Multifamily housing is not a permitted use in the Commercial Service District, so The Community Builders, Inc. filed a conditional use application with the City.  The application sought the BZAP's approval of two uses conditionally allowed in the Commercial Service District: "[d]welling units on [the] first floor" and "[d]welling units above [the] first floor."  *See* B.C.O. 1254.09 (listing the permitted and conditional uses for Bexley's commercial and institutional zoning districts, including the Commercial Service District).

{¶ 4}   After two hearings, the BZAP approved a conditional use for "dwelling units on all 3 floors of this proposed new 3-story building."  (Feb. 25, 2021 BZAP Decision and Record of Action.) Owners of properties near the proposed apartment building appealed the BZAP's decision to the City Council.  However, the City Council recused itself from hearing the appeal.  The property owners then appealed the City Council's decision to the

trial court, which reversed the City Council's decision, remanded the matter, and ordered the City Council to hear and decide the property owners' appeal.  On remand, the City Council affirmed the BZAP's decision.

{¶ 5}   Appellant-appellee, Leah Turner, who owns property adjacent to 2300 East Livingston Avenue, appealed the City Council's decision to the trial court.  The trial court determined that the proposed apartment building constituted a "multifamily dwelling" under Bexley ordinances because it consisted of "three or more dwelling units only."  *See* B.C.O. 1230.26(c) (defining "dwelling" and "multifamily dwelling").  B.C.O. 1254.09 does not list multifamily dwellings as a permitted or conditional use within the Commercial Service District, and "[u]ses not listed as permitted or conditional in [B.C.O. 1254.09] are prohibited."  B.C.O. 1254.09.  Thus, the trial court concluded that multifamily dwellings, such as the proposed apartment building, were prohibited in the Commercial Service District.

{¶ 6}   Appellants maintained that the apartment building could be built in the Commercial Service District because BZAP could conditionally allow "dwelling units on [the] first floor" and "dwelling units above [the] first floor."  *See* B.C.O. 1254.09 (listing conditional uses allowed in the Commercial Service District in the table).  To address that argument, the trial court parsed the definitions of "multifamily dwelling" and "dwelling unit."  A "dwelling unit" is "space within a building designed for occupancy by one family for living purposes and having all of the following permanent components:  cooking, bathing, and toilet facilities."  B.C.O. 1230.27.  Pursuant to the definition of "multifamily dwelling," a building containing "dwelling units" becomes a "multifamily dwelling" if it consists of "*only*" three or more dwelling units.  (Emphasis added.)  B.C.O. 1230.26(c). Thus, reasoned the trial court, BZAP could conditionally allow "dwelling units on [the] first floor" and "dwelling units above [the] first floor" if a building were not composed "only" of dwelling units, or, in other words, if the building included a space that had a commercial purpose.  A commercial space would preclude the building from being a multifamily dwelling, a prohibited use in the Commercial Service District.  The proposed apartment building had no commercial space, so as a multifamily dwelling, the building could not be constructed in the Commercial Service District.

{¶ 7} The trial court also determined that because the proposed apartment building was prohibited in the Commercial Service District, it did not meet the intent of the Commercial Service District. In conclusion, the trial court found the City Council's decision illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consequently, the trial court reversed the City Council's decision, and it remanded the matter to the City Council with instructions to deny The Community Builders, Inc.'s conditional use application.

{¶ 8} The City of Bexley, City Council, and the BZAP ("the City appellants") now appeal the trial court's decision, and they assign the following errors:

> [1.] The trial court erred when [it] held the Bexley Zoning Code prohibited "dwelling units" as a conditional use in the CS Zoning District without an accessory commercial [use].
>
> [2.] The trial court erred when it determined conditional uses for "dwelling units" in the CS District failed to meet the intent of the zoning district.
>
> [3.] The trial court erred when it did not find that Appellant, The Community Builders, Inc.[,] met all the criteria for a conditional use under the Bexley City Code and the decision of the City granting the conditional use was supported by a preponderance of the substantial, reliable[,] and probative admissible and relevant evidence on the whole record, as a matter of law.

{¶ 9} The Community Builders, Inc. also appeals the trial court's judgment, and it assigns the following errors:

> [1.] The Trial Court erroneously held that the Affordable Housing Development is a prohibited use of the Property.
>
> [2.] The Trial Court incorrectly determined that the Affordable Housing Development fails to meet the intent of the CS District.
>
> [3.] The Trial Court should have held that the City correctly determined that the conditional use factors were satisfied.
>
> [4.] Because the Trial Court's interpretation of the Zoning Code prohibits affordable housing and has a disparate impact on protected classes, it violates the City's Charter.

{¶ 10} Turner relied on R.C. 2506.01 to appeal the City Council's decision affirming the BZAP's grant of the conditional uses to the trial court. In such an appeal, the trial court must determine whether the appealed order "is constitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The trial court may then "affirm, vacate, or modify the order * * * or remand the cause" to the City Council "with instructions to enter an order * * * consistent with the findings or opinion" of the trial court. *Id.*

{¶ 11} The court of appeals standard of review under R.C. 2506.04 is more limited than the standard the trial court applies. *Shelley Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, ¶ 17. A court of appeals reviews the trial court's judgment for legal error and to determine whether the trial court abused its discretion in deciding whether the administrative order was supported by reliable, probative, and substantial evidence. *Id.* "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 30.

{¶ 12} We will address appellants' first assignments of error together because they raise similar arguments. By their first assignments of error, appellants challenge the trial court's interpretation of Bexley's zoning code.

{¶ 13} Interpretation of a zoning ordinance raises a question of law within the ambit of a court of appeal's review under R.C. 2506.04. *Bierlein v. Grandview Heights Bd. of Zoning Appeals*, 10th Dist. No. 18AP-874, 2020-Ohio-1395, ¶ 22. We review this question de novo. *Willow Grove, Ltd. v. Olmsted Twp. Bd. of Zoning Appeals*, 169 Ohio St.3d 759, 2022-Ohio-4364, ¶ 16.

{¶ 14} Courts interpret municipal ordinances in the same manner as statutes. *Id.* at ¶ 18. In interpreting an ordinance, a court's primary goal is to give effect to the intent of the enacting body. *Bierlein* at ¶ 22. To discern that intent, a court first looks to the text of the ordinance. *Willow Grove, Ltd.* at ¶ 18. A court must accord significance and effect to every word, phrase, sentence, and part of an ordinance, and avoid construing an ordinance

in a manner that would render words or phrases superfluous, meaningless, or inoperative. *Id.* at ¶ 19; *accord Cleveland Clinic Found.* at ¶ 35, quoting *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 152 (2000) (holding that "a court must not view [a zoning] provision in isolation; rather, its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.' "). When an ordinance is unambiguous, then a court applies the ordinance as written, instead of using the rules of statutory interpretation to determine the meaning of the ordinance. *Willow Grove, Ltd.* at ¶ 18; *State ex rel. Bailey v. Madison*, 10th Dist. No. 12AP-284, 2012-Ohio-4950, ¶ 8. If the language in an ordinance conveys a clear and definite meaning, the court must give effect to the words used, making neither additions to, nor deletions from, the language used in the ordinance. *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, ¶ 11.

{¶ 15} In this case, The Community Builders, Inc. sought approval for two conditional uses allowed in the Commercial Service District pursuant to B.C.O. 1254.09: "[d]welling units on [the] first floor" and "[d]welling units above [the] first floor." B.C.O. 1254.09 includes a table listing the permitted and conditional uses for each commercial and institutional zoning district in Bexley, including the Commercial Service District. Prior to that table, B.C.O. 1254.09 states, "Uses specifically listed for one district but not included in another are intentionally omitted from the latter. * * * Uses not listed as permitted or conditional in the following table are prohibited." In the Commercial Service District, the following uses are listed as permitted uses:

- Retail sales to include general merchandise, food, apparel and accessories, home furnishings and equipment, drug stores, gift and specialty shops, sporting goods, office supplies and hardware

- Retail services to include photographic studios, dry cleaners, barber and beauty shops, and small item repair services

- Restaurant

- Administrative, business, professional and similar office uses

- Essential services

· Accessory structures

B.C.O. 1254.09.

{¶ 16} In addition to the commercial and institutional zoning districts, Bexley has five residential zoning districts. B.C.O. 1252.08 includes a table listing the permitted and conditional uses allowed in the residential zoning districts. Of relevance to this case, the table lists "multi-family dwellings not exceeding 4 dwelling units per structure" as a permitted use in the Low Density Multifamily Residential District, which the code designates as the "R-12" district. B.C.O. 1252.08.

{¶ 17} The table in B.C.O. 1254.09, which lists permitted and conditional uses for the commercial and institutional zoning districts, indicates that in the Campus Planning District: Zone 1 "R-12 permitted uses" are permitted uses. Therefore, in the Campus Planning District: Zone 1, "multi-family dwellings not exceeding 4 dwelling units per structure" are a permitted use. Notably, "R-12 permitted uses" are not listed as permitted or conditional uses in any other commercial or institutional zoning district.

{¶ 18} The Bexley zoning code provides that the words used in the zoning code "shall be interpreted according to the definitions" set forth in the code. B.C.O. 1230.01. According to the Bexley zoning code, a "dwelling" is:

> any building or portion thereof designed or used exclusively as the residence or sleeping place of one or more persons, but not including a tent, cabin, trailer, or trailer coach, boarding or rooming house, hotel or motel. A building consisting of one or more dwelling units, is defined as follows:
>
> (a) Single-family dwelling, consisting of one dwelling unit only;
>
> (b) Two-family dwelling, consisting of two dwelling units only;
>
> (c) Multifamily dwelling, consisting of three or more dwelling units only.

B.C.O. 1230.26. As we stated above, a "dwelling unit" is "space within a building designed for occupancy by one family for living purposes and having all of the following permanent components: cooking, bathing, and toilet facilities." B.C.O. 1230.27.

{¶ 19} In this case, The Community Builders, Inc. propose to construct a building that consists solely of 27 apartments, or dwelling units. Thus, applying the definitions of

the Bexley zoning code, we determine that The Community Builders, Inc. intends to build a multifamily dwelling.

{¶ 20} Multifamily dwellings are not listed as a permitted or conditional use in the Commercial Service District. This omission has two results. First, B.C.O. 1254.09 provides that "[u]ses specifically listed for one district but not included in another are intentionally omitted from the latter." The Bexley zoning code recognizes multifamily dwellings as a permitted use in the Low Density Multifamily Residential District and the Campus Planning District: Zone 1. Because multifamily dwellings are a permitted use in those districts but not in the Commercial Service District, multifamily dwellings are a use intentionally omitted from the Commercial Service District.

{¶ 21} More importantly, B.C.O. 1254.09 also states that "[u]ses not listed as permitted or conditional in the following table are prohibited." By this language, the Bexley zoning code establishes itself as a permissive code, which "lists all the uses that are permitted within a given district, and prohibits anything not specifically listed." *Bailey*, 2012-Ohio-4950, at ¶ 10. Therefore, pursuant to the plain language of B.C.O. 1254.09, the omission of multifamily dwellings from the list of permitted and conditional uses means multifamily dwellings are prohibited in the Commercial Service District. Because the proposed apartment building constitutes a multifamily dwelling, it is prohibited in the Commercial Service District.

{¶ 22} As appellants argue, B.C.O. 1254.09 lists "[d]welling units on [the] first floor" and "[d]welling units above [the] first floor" as uses conditionally allowed in the Commercial Service District. In interpreting an ordinance, a court accords effect and significance to all parts of an ordinance. *Willow Grove, Ltd.,* 169 Ohio St.3d 759, 2022-Ohio-4364, at ¶ 19. The listed conditional uses, therefore, must be read in conjunction with the prohibition in the Commercial Service District on multifamily dwellings, i.e., buildings "consisting of three or more dwelling units only." Read in its totality, B.C.O. 1254.09 conditionally allows "[d]welling units on [the] first floor" and "[d]welling units above [the] first floor" but prohibits buildings "consisting of three or more dwelling units only" in the Commercial Service District. Consequently, as the trial court found, the BZAP conceivably could grant a conditional use application for dwelling units on all floors of a multiple floor building if the building did not solely contain dwelling units. Thus, if a building included

space for one of the non-residential uses listed as a permitted or conditional use in the Commercial Service District, as well as multiple dwelling units on the first through top floors, the BZAP could grant the developer's conditional use application.

{¶ 23} Appellants point out that courts construe ordinances restricting the use of property strictly and cannot extend the scope of restrictions to include limitations not clearly prescribed. *See Cleveland Clinic Found.*, 2014-Ohio-4809 at ¶ 34. Appellants contend that reading B.C.O. 1254.09 to prohibit multifamily dwellings in the Commercial Service District amounts to grafting onto the Bexley zoning code a use restriction not contained in the ordinance. We disagree. B.C.O. 1254.09 unambiguously states that "[u]ses not listed as permitted or conditional in the following table are prohibited." Multifamily dwellings are not listed as a permitted or conditional use in the Commercial Service District. Thus, the clear, unambiguous text of the ordinance leads to the unescapable conclusion that multifamily dwellings are a prohibited use in the Commercial Service District.

{¶ 24} Appellants also argue that we should defer to the interpretation that the BZAP and City Council give to B.C.O. 1254.09. Under that interpretation, multifamily dwellings are a recognized use only in the residential zoning districts, and not in the commercial and institutional zoning districts (with the exception of the Campus Planning District: Zone 1). If multifamily dwellings are not a recognized use in the Commercial Service District, then the absence of "multifamily dwellings" from the list of permitted and conditional uses does not prohibit the presence of such dwellings in the district.

{¶ 25} We do not find this interpretation persuasive. The City's own interpretation acknowledges multifamily dwellings are a use referenced in the B.C.O. 1254.09 table because "R-12 permitted uses," including "multi-family dwellings not exceeding 4 dwelling units per structure," are permitted uses in the Campus Planning District: Zone 1. Moreover, we can find nothing in the zoning code that limits multifamily dwellings as a recognized use to a particular section or part of code. Appellants point us to no language in the zoning code supporting the City's interpretation. To the contrary, B.C.O. 1254.09 broadly states, "*Uses* not listed as permitted or conditional in the following table are prohibited." (Emphasis added.) B.C.O. 1254.09 does not exclude any uses from its sweeping prohibition; if a use is not named, it is prohibited.

**{¶ 26}** Additionally, we owe no deference to the City's interpretation of the zoning code. We have previously held that "[u]nless the interpretation of a local zoning code is clearly in error, a court should defer to the administrative interpretation." *Access Ohio, LLC v. Gahanna*, 10th Dist. No. 19AP-64, 2020-Ohio-2908, ¶ 16. Since we reached that holding, the Supreme Court of Ohio decided *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Eng. & Surveyors*, ___ Ohio St.3d ___, 2022-Ohio-4677, in which the court considered the level of deference due to an administrative interpretation of a statute. The court determined:

> Under our system of separation of powers, it is not appropriate for a court to turn over its interpretative authority to an administrative agency. * * * In our constitutional system, it is exclusively the 'the province and duty of the judicial department to say what the law is.' *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Thus, we reject the position * * * that the courts are required to defer to [an administrative agency's] reasonable interpretation of a statute. We similarly reject the * * * view that a court must defer to an agency's interpretation of an ambiguous statute.

*Id.* at ¶ 42-43. The Supreme Court further clarified that a court *may* consider an administrative agency's interpretation of a legal text if it finds a statute ambiguous. *Id.* at ¶ 44.

**{¶ 27}** Although this case involves ordinances instead of statutes, our constitutional role remains the same: to say what the law is. We, therefore, cannot exercise the level of deference to the administrative interpretation of Bexley's zoning code that *Access Ohio* requires. *TWISM*, not *Access Ohio*, is now the applicable law. Under *TWISM*, where—like here—the legal text is clear and unambiguous, a court never even considers the administrative interpretation of that text.

**{¶ 28}** Having addressed all of appellants' arguments, we must rule on their assignments of error. Based on the foregoing, we overrule The Community Builders, Inc.'s first assignment of error, which argues that the trial court erred in concluding the proposed apartment building was a prohibited use of the property. We also must overrule the City appellants' first assignment of error, but for a different reason. The City appellants claim that the trial court erred in holding that the zoning code prohibited dwelling units as a conditional use in the Commercial Service District without an accessory commercial use.

But the City appellants misconstrue the trial court's holding. The trial court held that B.C.O. 1254.09 prohibited multifamily dwellings in the Commercial Service District. The trial court then pointed out that conditional use permits are allowed for "[d]welling units on [the] first floor" and "[d]welling units above [the] first floor," as long as the building has some commercial use so it does not constitute a multifamily dwelling. The City appellants twist this statement into a more expansive holding. Because the City appellants challenge a holding the trial court never reached, we overrule the City appellants' first assignment of error.

{¶ 29} By their second assignments of error, appellants argue that the trial court erred in determining that the proposed apartment building did not meet the intent of the Commercial Service District. By their third assignments of error, appellants argue that the trial court should have found that the proposed apartment building met all the conditional use factors. These assignments of error relate to whether The Community Builders, Inc. satisfied the requirements for the approval of its conditional use application under B.C.O. 1226.12. Because we have determined that the Bexley zoning code prohibits the construction of the proposed apartment building in the Commercial Service District, these assignments of error are moot. Therefore, we overrule appellants' second and third assignments of error.

{¶ 30} By The Community Builders, Inc.'s fourth assignment of error, it argues that the trial court's interpretation of the zoning code violates Bexley's Charter because that interpretation prohibits affordable housing, which disparately impacts protected classes. We find this argument unsupported by the law and record.

{¶ 31} The Bexley Charter provides:

> The ordinances of the City shall be interpreted consistent with the City's values as set forth in this Section. Specifically, the ordinances of the City shall be interpreted to avoid discriminatory impact on any person on the basis of that individual's race, sex, sexual orientation, gender identity or expression, color, religion or non-religion, ancestry, national origin, age, disability familial status or military status and to ensure fair and equitable treatment of individuals in their interaction with the City.

Bexley Charter, Section 6.

{¶ 32} When the text of an ordinance is unambiguous, a court does not look beyond the text of the ordinance. *TWISM*, 2022-Ohio-4677 at ¶ 44. In this case, because the zoning code unambiguously prohibits multifamily housing in the Commercial Service District, the trial court had no reason to consider Section 6 of the Bexley Charter in interpreting the code.

{¶ 33} Moreover, although The Community Builders, Inc. claims that trial court's interpretation of the zoning code prohibits any affordable housing in the Commercial Service District, it points to no evidence to support this claim. The only evidence The Community Builders, Inc. offers of a disparate impact on a protected class is a slide from a presentation The Community Builders, Inc. made before the BZAP that states:

- The proposed residential use aligns with community goals to bring new mixed-income housing opportunities:

- **City of Bexley Diversity Equity & Inclusion Strategy (2020)**
  - *Goal #3: Create an Inclusive Greater Bexley Community*
  - *"Continue to encourage the CIC in their efforts to identify affordable housing opportunities for people with low incomes as part of new development (including but not limited to rezoning and rehabbing current and future building and projects) as well as on its own"*

- **City of Bexley Strategic Plan (2013)**
  - *"Our vision is a Bexley that is a top-tier community of extremely high quality and excellence that is…centered on families of all kinds"*
  - Work Toward Meaningful Redevelopment of Livingston Avenue
    - Ensure affordable housing options continue to be available for residents in the area.

(Emphasis sic.) (Applicant's Ex. to the Feb. 25, 2021 Hearing.)

{¶ 34} This slide indicates that the City of Bexley endeavors to increase the amount of affordable housing in the City in an effort to promote inclusion and attract "families of all kinds." The slide, however, does not prove that the failure to increase the amount of affordable housing in the City will have an actual disparate impact on any particular

protected class.    Accordingly, we overrule The Community Builders, Inc.'s fourth assignment of error.

{¶ 35}  As a final matter, we remind the City of Bexley that it has the power to amend the zoning code to accomplish its goal of developing affordable housing like the proposed apartment building in the Commercial Service District.  The best path forward may be legislative action, not further litigation.

{¶ 36}  For the foregoing reasons, we overrule the City appellants' first assignment of error, and we overrule as moot the City appellants' second and third assignments of error. We overrule The Community Builders, Inc.'s first and fourth assignments of error, and we overrule as moot The Community Builders, Inc.'s second and third assignments of error. We affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

JAMISON and LELAND, JJ., concur.

_____