[Cite as *Kennedy v. Heath Bd. of Zoning Appeals*, 2025-Ohio-4440.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD KENNEDY | Case No. 2025 CA 00023 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Licking County Court of Common Pleas, Case No. 2022 CV 1166 |
| CITY OF HEATH BOARD OF ZONING APPEALS | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: September 22, 2025 |

**BEFORE:** DAVID M. GORMLEY, P.J.; CRAIG R. BALDWIN, J.; KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** JONATHAN A. VELEY, for Plaintiff-Appellee; DAVID C. MORRISON, for Defendant-Appellant

OPINION

*Popham, J.*

{¶1}    Appellant, the City of Heath Board of Zoning Appeals ("BZA"), appeals the judgment of the Licking County Court of Common Pleas vacating the BZA's denial of appellee Richard Kennedy's ("Kennedy") "Sign Permit Application."   For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}    On June 3, 2022, Kennedy submitted a "Sign Permit Application" to the BZA for a proposed sign located at 550 Hebron Road in Heath, Ohio.  On the application,

Kennedy listed the "type of sign" for which he sought a permit as a "digital billboard." On June 7, 2022, Zoning Inspector Daulton Brown ("Brown") initially denied the application, due to the height of the digital billboard and because the plan Kennedy submitted did not include the removal of the sign currently located on the property.

{¶3} Brown and Kennedy exchanged several emails in which they discussed lowering the height of the digital billboard, removing the sign currently located on the property, and obtaining a permit from the Ohio Department of Transportation. On July 14, 2022, Brown sent Kennedy an email stating "[s]o after talking with … our law director, we are going to have to deny the sign for 550 Hebron Rd. due to the sign's intended use of off-premises advertising that we only allow per ordinance 1187.10 in M-2 zoned districts. If you wish to still pursue this then you will need to fill out a BZA application and submit it to us to get you onto the next meeting agenda."

{¶4} In order to get on the BZA meeting agenda, Kennedy was required to fill out a form used for both "appeals" and "variances." On July 15, 2022, Kennedy filled out both portions of the form – appeal and variance, stating: (1) he appealed to the BZA due to "the zoning code not being interpreted properly"; and (2) a variance should be granted because he "can meet all of the requirements of the zoning code." The BZA scheduled a public hearing on August 16, 2022.

{¶5} At the August 16th public hearing, Kennedy presented his argument. The BZA members discussed the brightness standards of digital billboards near residential districts, the placement of digital billboards in a B-3 district, the size of Kennedy's proposed digital billboard, and whether a digital billboard qualifies as a digital sign. Kennedy confirmed he would remove the existing sign located on the property, and stated

he modified the height of the proposed digital billboard. At the conclusion of the hearing, the BZA members voted to table the issue in order to allow for further review by the law director.

{¶6} The BZA set the matter for a second public hearing on September 20, 2022. On that date, Kennedy's legal counsel sent a letter to the law director summarizing Kennedy's argument as to why his appeal should be granted. At the second public hearing Kennedy presented arguments in support of his appeal. The BZA members again discussed both the size and the location of the proposed digital billboard. At the conclusion of the hearing, the members of the BZA voted 4-1 to deny Kennedy's appeal.

{¶7} The minutes of the public hearing note the following:

Richard Kennedy is appealing the Zoning Inspector's decision denying Mr. Kennedy's application, dated June 3, 2022, to permit the erection of a digital outdoor billboard, for off-premises advertising, and with a screen size of more than 100 square feet, at 550 Hebron Road . . . Motion by Van Winkle to affirm the Zoning Inspector's decision. Second by Day. Roll Call Vote. Van Winkle, aye. Stewart, aye. Cadenhead, aye. Rosato, nay. Day, aye. Case 8-2022 – 550 Hebron Rd. The Zoning Inspector's decision denying Mr. Kennedy's application to permit the erection of a digital outdoor billboard, for off-premises advertising, and with a screen size of more than 100 square feet, at 550 Hebron Road is affirmed.

{¶8} On October 17, 2022, Kennedy appealed the BZA's September 20, 2022, decision to the Licking County Court of Common Pleas. On October 27, 2023, the BZA filed the transcript of the proceedings pursuant to R.C. 2506.06. On December 12, 2023,

Kennedy filed his brief.  On January 9, 2024, the BZA filed its brief.  On January 29, 2024, the trial court held a non-oral hearing.

{¶9}    On April 9, 2025, the trial court issued a judgment entry vacating the denial of Kennedy's permit and remanding the matter for further proceedings.  The trial court specifically found sections 1187.10(b) and 1187.10(h) of the Heath Codified Ordinances to be in conflict and, thus, the court resorted to rules of statutory interpretation to conclude that the BZA's affirmance of Brown's denial of the permit was in error.

{¶10}  The BZA appeals the April 9, 2025, judgment entry of the Licking County Court of Common Pleas and assigns the following as error:

{¶11}  "THE TRIAL COURT ERRED AS A MATTER OF CODIFIED LAW BY VACATING A ZONING BOARD'S DENIAL OF A SIGN-PERMIT APPLICATION."

*Standard of Review*

{¶12}  R.C. 2506.04, which sets forth the applicable standards of review for the court of common pleas and appellate court, provides in pertinent part:

[T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.  Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of

law as provided in the Rules of Appellate Procedure, and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

{¶13} This case centers around the statutory interpretation and/or construction of the City of Heath's municipal ordinances. Both Kennedy and the BZA agree that, because the issue is one of statutory interpretation and/or construction, this Court's review is de novo. "Interpretation of a zoning ordinance raises a question of law within the court of appeals' limited review in an R.C. 2506.04 appeal." *Bierlein v. Grandview Hts. Bd. of Zoning Appeals*, 2020-Ohio-1395, ¶ 22 (10th Dist.); *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 25 ("a question of statutory construction presents an issue of law that we determine de novo").

*Ordinances*

{¶14} In September of 2001, the City of Heath codified Ordinance Number 1187.10 "Signs – General Requirements". This includes subsection (h), entitled "Billboards." Pertinent to this appeal is subsection (h)(1) - "[b]illboards are hereby defined as any sign with over 100 square feet of advertising for off-premise business" and section (h)(2)(A) - "[o]utdoor advertising billboards shall be permitted only in M-2 Districts ***". Heath Cod.Ord. 1187.10.

{¶15} In August of 2014, the City of Heath amended subsection (b) of Ordinance 1187.10. Subsection (b) is now titled, "[a]nimated, mechanical, and digital signs and billboards," and provides, in pertinent part, as follows:

(1) **Purpose and intent.** The intent of this subsection is to provide standards allowing utilization of specific types of mechanical moving signs and billboards and digital signs and billboards that create digital images that

are changed every few seconds by computers. The purpose of the standards is to protect residential areas from exposure to light and motion sequences involving lighted messages that exceed those of existing signage, and manage, for safety purposes, the exposure of motorists to excessive distractions caused by visual display adjacent to roadways.

**(2) <u>Time-and-temperature and digital signs.</u>**

    **A. Time-and-temperature signs:** Single line electronic time and temperature signs are allowed. All other types of mechanical or electronic changeable copy, signs, flashing signs, moving signs and animation signs are prohibited, except as provided herein.

    **B. Digital Signs:**

    ***

    **2. Size.** *** Multi-tenant sites having more than 200 feet of road frontage may have digital signs with lighted display surfaces of up to 100 square feet in area. The entire sign must conform to the height, size, setback, and location requirements currently established for respective zoning district[s].

    **3. Style and brightness.** The restriction applicable to digital billboards listed in Sections 1187.10(b)(4)(c) and (d) shall apply to digital signs.

    **4. Location.** Digital signs are prohibited everywhere except in the B-3, M-1, and M-2 Zoning Districts. Whenever a proposed digital sign is

adjacent to a residential property or a residential district, approval of the Board of Zoning and Building Appeals is required.

\*\*\*

**(4) Size, height, style, brightness of digital billboards.**

**A. Size:** The maximum total sign area for digital billboards shall not exceed that of the billboards they replace, and in no case shall exceed 378 square feet.  In cases where multiple billboards are attached to a single support system, only one billboard may be a digital billboard.

\*\*\*

**C. Style:** Other than changes of digital image, which shall not occur more frequently than once every eight seconds, restrictions listed in Sections 1187.10(a) and (b) shall apply.

**D. Brightness:** To protect residential areas from excessive pulsating light, the brightness of light emitted from an electronic variable message sign shall not increase by more than 0.3-foot candles . . . [w]ithin 1,000 feet of residences, the brightness may be required to be adjusted to 00.25-foot candles. \*\*\*

**(5) If located on a state highway.**  If the sign is located on a state highway, the following information must be provided:

\*\*\*

(B) A copy of the ODOT permit allowing the proposed electronic variable message sign. \*\*\*

**(7) Permit procedures.**

\*\*\*

B.   Permits are valid for a period of two years from the date of issuance of the permit.  At the end of the two-year period, a new permit must be obtained or the electronic variable message (digital) billboard must be removed.

{¶16}  "The primary goal of statutory interpretation is to give effect to the intent of the enacting body."  *Bierlein*, 2020-Ohio-1395 at ¶ 22.  A court must first look to the language contained in the ordinance itself.  *Olentangy Local School Dist. Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 2024-Ohio-1563, ¶ 26 (5th Dist.).  When the language is plain and unambiguous, this Court must apply it as written.  *Id.*  Accordingly, when an ordinance is plain and unambiguous, this Court should not resort to utilizing the rules of statutory interpretation or considering public policy implications.  *Id.*

{¶17}  A court may interpret an ordinance only when an ordinance is ambiguous. *State ex rel. Celebrezze v. Bd. of Cty. Commrs. of Allen Cty.*, 32 Ohio St.3d 24, 27 (1987). "It is only where the words of a statute are ambiguous or are based upon an uncertain meaning or there is an apparent conflict of some provisions that a court has the right to interpret a statute."  *Drake-Lassie v. State Farm Ins. Cos.*, 129 Ohio App.3d 781, 788 (10th Dist. 1998).  Ambiguity may arise not only from "the indefiniteness of the meaning of a word or phrase," but also "from a word or phrase that by itself is 'perfectly clear in its meaning' but that becomes 'clouded with obscurity when considered in relation to other words in a statement containing the word or phrase.'"  *Dana Corp. v. Testa, Tax Commr.*, 2018-Ohio-1561, ¶ 23, quoting *Pittsburgh Steel Co. v. Bowers*, 173 Ohio St. 74, 77

(1962). If the language of a statute or ordinance is ambiguous, a court may utilize "rules of statutory construction to determine legislative intent." *Henschen v. Ohio Elections Comm.*, 2024-Ohio-4592, ¶ 24 (10th Dist.).

{¶18} The Supreme Court of Ohio has held that, when analyzing ordinances, a court must be cognizant of two principles. *Cleveland Clinic*, 2014-Ohio-4809 at ¶ 33. "The first of these principles states that zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled." *Id.* at ¶ 34. Accordingly, restrictions imposed by zoning ordinances must be "strictly construed" and "limitations by implication" are not permitted. *Id.* Second, a court should not view a zoning provision in isolation; rather, it should be read "in the context of the entire ordinance." *Id.* at ¶ 35.

*Location of Digital Billboard*

{¶19} The BZA contends the trial court committed error by ignoring the plain language contained in Heath City Ordinance 1187.10(h) mandating that billboards are permitted in only M-2 districts. The BZA argues Ordinance sections 1187.10(b)(2)(B)(4) and 1187.10(h) are not in conflict because (b)(2)(B)(4) regulates the operational standards of digital billboards such as size, height, and brightness, while (h) regulates the location of digital billboards. We disagree.

{¶20} We find the question of whether sections 1187.10(b)(2)(B)(4) and 1187.10(h) are in conflict depends upon whether a digital billboard qualifies as a digital sign. The phrase "digital sign" is not defined in the City of Heath's Planning and Zoning Code. However, the term "sign" is defined as "a name, identification, description, display

or illustration which is affixed to, painted or represented, directly or indirectly upon a building, structure, parcel or lot and which directs attention to an object, product, place, activity, person, institution, organization, or business." Heath Cod.Ord. 1187.02(z). Subsection (b)(1) of Ordinance 1187.10 provides that subsection (b) is intended to regulate signs and billboards "that create digital images that are changed every few seconds by computers." Utilizing these definitions, a digital billboard qualifies as a digital sign pursuant to Chapter 1187 of the City of Heath's Planning and Zoning Code. We additionally note that, throughout its briefing in both the trial court and this Court, the BZA confirms that digital billboards qualify as digital signs. (BZA Appellate Brief, pp. 2, 8; Trial Brief of BZA at pp. 8, 14).

{¶21} Because digital billboards qualify as digital signs, section 1187.10(b)(2)(B)(4) is applicable to digital billboards. This section provides that digital signs (and thus, digital billboards) are prohibited everywhere except in B-3, M-1, and M-2 districts. Whereas, 1187.10(h)(2)(A) "Billboards" provides that outdoor advertising billboards are permitted only in M-2 districts.

{¶22} Of course, when viewed in isolation, 1187.10(b)(2)(B)(4) and 1187.10(h) do not conflict. However, a zoning provision must not be viewed in isolation, "rather, its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.'" *Cleveland Clinic*, 2014-Ohio-4809 at ¶ 35, quoting *Univ. Circle, Inc. v. City of Cleveland*, 56 Ohio St.2d 180, 184 (1978). When applied to the present circumstances, 1187.10(b)(2)(B)(4) and 1187.10(h) conflict because the former allows digital signs (and thus digital billboards) in B-3, M-1, and M-2 districts, while the latter allows outdoor advertising billboards only in M-2 districts. In context of the entire

ordinance, these two provisions cannot be read in harmony; thus, we must rely on the principles of statutory construction to resolve the conflict and give effect to Heath City Council's intent.

{¶23} The Ohio Revised Code sets forth several rules of construction to be applied in cases of potentially conflicting statutes. When a general provision conflicts with a specific provision, "they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevails." R.C. 1.51. Further, "if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails," and ". . . amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation." R.C. 1.52(A) and R.C. 1.52(B).

{¶24} Additionally, the Supreme Court of Ohio has addressed rules of statutory construction when considering possibly conflicting statutes, stating that a court, "must harmonize and give full application to all such statutes [statutes bearing upon the same subject matter] unless they are irreconcilable and in hopeless conflict." *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28 35 (1991). Here, we cannot give full application to both sections of the ordinance; they are in hopeless conflict.

{¶25} Utilizing the rules of statutory construction, we find section 1187.10(b)(2)(B)(4) to be the controlling provision. 1187.10(b)(2)(B)(4) - Digital Billboards - is the more specific section and was enacted later in time than 1187.10(h)(2)(A) – Billboards, as discussed above. 1187.10(h)(2)(A) is the more general provision, is the

earlier adoption of the two sections, and there is no manifest intent that this general provision prevail over the more specific section – 1187.10(b)(2)(B)(4), which is the more recent and more specific statutory provision and, thus, is applicable to digital signs, including digital billboards, rather than 1187.10(h)(2)(A). See *Summerville v. City of Forest Park*, 2010-Ohio-6280.

{¶26} There is no dispute in this case that the proposed digital billboard is to be erected in a B-3 district. Pursuant to 1187.10(b)(2)(B)(4), digital signs, including digital billboards, are permissible in a B-3 district. Accordingly, the BZA committed error in rejecting Kennedy's application due to the location of the proposed digital billboard being in a B-3 district.

*Size of Digital Billboard*

{¶27} The BZA contends that, even if a digital billboard is permitted in a B-3 district, Kennedy's permit was properly denied because Kennedy's proposed digital billboard exceeds the 100 square feet limitation contained in 1187.10(b)(2)(B)(2) – Digital Signs-size. While 1187.10(b)(2)(B)(2) contains a 100 square feet limitation, 1187.10(b)(4)(A) - Size, Height, Style, Brightness of Digital Billboards-size provides that a digital billboard "shall not exceed that of the billboards they replace, and in no case shall exceed 378 square feet." We must rely on principles of statutory interpretation to resolve these two conflicting provisions.

{¶28} Both of the provisions were enacted at the same time. While all digital billboards are digital signs, not all digital signs are digital billboards. Because digital billboards are a subset of digital signs, 1187.10(b)(4)(A) is the more specific provision. The remaining language contained in 1187.10(b)(4)(4) also demonstrates that it is the

more specific provision because this subsection specifically lists and describes the style and brightness standards referenced in 1187.10(b)(2)(B)(3). These specific style and brightness standards are key to achieving the object sought to be obtained by the ordinance, i.e., protecting residential areas from exposure to light and motion sequences.

{¶29} Utilizing the rules of statutory construction, we find 1187.10(b)(4)(A) to be the controlling provision. There is no dispute in this case that the proposed billboard has a lighted display surface less than 378 square feet. Accordingly, the BZA committed error in rejecting Kennedy's application based on the size of the proposed digital billboard.

*Purpose of Ordinance / Policy Arguments*

{¶30} The BZA contends the reversal of its denial of Kennedy's permit is an "absurd result" that is not in compliance with the stated purpose of the ordinance, ignores public safety by failing to adequately protect the public from the flashing lights of digital billboards, fails to give the BZA the deference to which it is entitled, and impermissibly "rewrites" the City of Heath's Planning and Zoning Code.

{¶31} The stated purpose of Ordinance 1187.10(b) is to provide standards for digital billboards in order to "protect residential areas from exposure to light and motion . . . and manage, for safety purposes, the exposure of motorists to excessive distractions caused by visual displays adjacent to roadways." Heath Cod.Ord. 1187.10(b)(1). Our statutory interpretation does not diminish or frustrate the stated purpose of 1187.10(b). As a result of our analysis, digital billboards are prohibited everywhere except in B-3, M-1, and M-2 districts. Heath Cod.Ord. 1187.10(b)(2)(B)(4). Further, digital billboards are limited in size, there are specific standards for the frequency of the changing of digital images on digital billboards, and specific standards for the permitted brightness of digital

billboards. Heath Cod.Ord. 1187.10(b)(4)(A), (C), and (D).  With respect to motorists, in certain scenarios like this one, the applicant must obtain a permit from the Ohio Department of Transportation, which Kennedy has received.  Heath Cod.Ord. 1187.10(b)(5).  Additionally, even if a permit is issued for a digital billboard, the permit is valid for a period of two years; a new permit must be obtained after two years.  Heath Cod.Ord. 1187.10(b)(7).  None of these safeguards are changed or diminished by our statutory interpretation.  The result is not "absurd," because digital billboards are still regulated in specific ways to meet the stated purpose of 1187.10(b).

{¶32}  As to the BZA's argument regarding the lack of judicial deference to the BZA, this Court has previously held that a board of zoning appeals, "must be given due deference in interpreting its own resolution language."  *Zickefoose v. Bd. of Zoning Appeals of Green Twp.*, 2000 WL 1289429, *3 (5th Dist.).  However, in the same opinion, this Court also held that zoning restrictions must be "strictly construed in favor of the property owner" because "[z]oning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be entitled."  *Id.* at *4, quoting *Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261 (1981).  The Supreme Court of Ohio has stated that, if ordinances conflict, these provisions "must be construed in favor of the property owner."  *Cleveland Clinic*, 2014-Ohio-4809 at fn. 3.  Despite any deference given to the BZA in interpreting the ordinance language, "the scope of restrictions cannot be extended to include limitations not clearly prescribed."  *Id.* at ¶ 34.  In this case, deferring to the BZA's interpretation would result in including limitations not clearly prescribed by Ordinance 1187.10.

{¶33} Finally, this Court is not "impermissibly rewriting" the zoning code. Rather, this Court is interpreting statutory language pursuant to the rules provided by the Ohio Revised Code, as interpreted by the Supreme Court of Ohio. "The question is not what did [city council] intend to enact, but what is the meaning of that which it did enact." *State v. Bollar*, 2022-Ohio-4370, ¶ 10. Heath City Council maintains the power "to adopt and provide for the enforcement of zoning classifications, districts, uses, and regulations by ordinance . . .". Charter of the City of Heath, Ohio, 3.08(h). This decision does not frustrate that power. If council "determines that this should no longer be the law" it "may use its discretion to amend [Ordinance 1187.10] to require a different approach." *Id.* at 20.

{¶34} Based upon our de novo review, we find the trial court did not commit error in vacating the BZA's denial of Kennedy's application. The BZA's assignment of error is overruled, and the judgment of the Licking County Court of Common Pleas is affirmed.

For the reasons stated in our accompanying Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.

Costs to Appellant.

By: Popham, J. and

Baldwin, J. concur;

Gormley, P.J., dissents

*Gormley, J., dissenting*

**{¶35}** According to paragraph 24 of the majority opinion, a "hopeless conflict" exists in the ordinances that are at issue in this case. I disagree.

**{¶36}** To the sure, the City of Heath's ordinances are not a model of clarity, and they could benefit from a systematic reorganization. We ought not lightly presume, though, that the ordinances' drafters have legislated in self-contradictory terms. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory. . . . [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously").

**{¶37}** State and federal courts have time and again reminded us that we have a duty to "fit, if possible, all parts [of a statute] into [a] harmonious whole." *F.T.C. v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959). *See, e.g., Jones v. Hendrix*, 599 U.S. 465, 478 (2023) ("Basic principles of statutory interpretation require that we construe [statutory provisions] . . . in harmony, not set them at cross-purposes"); *State ex rel. Mirlisena v.*

*Hamilton Cty. Bd. of Elections*, 67 Ohio St.3d 597, 599 (1993) ("It is the duty of any court, when construing a statute, to give effect to all of the pronouncements of the statute and to render the statute compatible (to harmonize) with other and related enactments whenever and wherever possible"); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (when two provisions "are capable of co-existence, it is the duty of the courts . . . to regard each as effective").

{¶38} The majority's view that the City of Heath's ordinances regulating digital signs on the one hand and billboards on the other cannot be harmonized rests, I believe, on a flawed reading of those provisions. Seizing on that incorrect reading, the majority then embraces the view that one or the other provision must give way. I, instead, read the various ordinances differently, and I believe that they can be reconciled.

{¶39} The majority begins its journey down the wrong path in paragraph 20, claiming there that "a digital billboard qualifies as a digital sign." That same view is echoed more emphatically in paragraph 28, where the majority declares that "all digital billboards are digital signs."

{¶40} Yet that cannot be true, at least not always. After all, a digital sign, one ordinance tells us, can be no larger than "100 square feet." Heath Cod.Ord 1187.10(b)(2)(B)(2). In contrast, a digital billboard can be as large as "378 square feet." Heath Cod.Ord. 1187.10(b)(4)(A). So, we know that digital billboards that cover more than 100 square feet but are perhaps as large as 378 square feet are most certainly not digital signs. The majority inexplicably insists otherwise.

{¶41} And if, as the majority claims, "all digital billboards are digital signs," the reasonable reader is left to wonder: Why did Heath bother to use the term "digital

billboard" in its ordinances?  If every digital billboard is a digital sign, what would be the point of spelling out separate rules in the ordinances for those two supposedly synonymous items?

{¶42}  I believe that we ought to read the ordinances with an eye toward the view that the City of Heath — by employing the distinct terms "digital billboard" and "digital sign" — does not see the two as interchangeable items.  And my view, I believe, comports with our duty when interpreting legislation.  See *State ex rel. Byk v. Indus. Comm.*, 2025-Ohio-2044, ¶ 33 ("When interpreting statutes, we must give effect to every term . . . and avoid a construction that would render any provision meaningless, inoperative, or superfluous") (Quotations omitted.); *Dept. of Agriculture Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024) ("Proper respect for Congress cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are 'superfluous' or 'void' of significance"); *Matter of Guardianship of A.E.R.*, 2018-Ohio-1685, ¶ 24 (5th Dist.) ("The principles of statutory construction . . . indicate that separate terms should reasonably be given distinct meaning").

{¶43}  The majority's next misstatement appears in paragraph 21, where we are told that "section 1187.10(b)(2)(B)(4) is applicable to digital billboards."  That, in my view, is a conclusion unsupported by the text in question.  The ordinance cited by the majority focuses on digital signs, not digital billboards.  Those latter two words appear nowhere in the (b)(2)(B)(4) clause, and only by declaring — wrongly — that "all digital billboards are digital signs" (¶ 28 of the court's opinion) can the majority build its argument that the digital-sign provision in the (b)(2)(B)(4) paragraph must necessarily apply to digital billboards.  It does not.

**{¶44}** The majority's misreading of these provisions leads the court to see a conflict between ordinances where none exists, and that purported conflict now leaves the city with a portion of its ordinances seemingly unenforceable, according to the court.

**{¶45}** Surely the more logical reading of these ordinances — and one that holds true to the text itself and comports with our duty to harmonize multiple statutory provisions — is the view that a digital billboard is a type of billboard. A "billboard," after all, covers more than 100 square feet and can be as large as 378 square feet. See Heath Cod.Ord. 1187.02(c) (a billboard is a sign "exceeding 100 square feet in area") and Heath Cod.Ord. 1187.10(h)(3) (a billboard cannot "exceed 378 square feet").

**{¶46}** I acknowledge that our job of interpreting the ordinances' meaning would have been much easier had the city explicitly said that a digital billboard is a type of billboard. Even so, if the reasonable reader is willing to take with me that mental leap and embrace what I believe is inherent in the structure and design of Heath's sign ordinances as a whole, then no provision of the ordinances conflicts with any other, and we need not embrace the majority's stance that one provision is the "controlling provision" and another one must be set aside.

**{¶47}** In suggesting that inherent in the ordinances is the implied notion that a digital billboard is a type of billboard, I believe that I am embracing a maxim that higher courts have repeatedly exhorted us to follow: statutory words should be given their natural and ordinary meaning. *See, e.g., Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 10 ("a court must give effect to the natural and most obvious import of a statute's language, without resorting to subtle and forced constructions") (quotations and brackets omitted);

*Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their ordinary or natural meaning.") (quotations omitted).

**{¶48}** I do not feel that I am bending the ordinances' text by inferring that Heath intends digital billboards to be a type of billboard. And I certainly feel that such an inference is more reasonable than the majority's claim that "all digital billboards are digital signs," which is expressly inconsistent with the ordinances' size provisions that cap the surface area of digital signs at 100 square feet and cap the surface area of digital billboards at 378 square feet.

**{¶49}** Once a reasonable reader of the ordinances understands that a digital billboard is a type of billboard, then the ordinances' logical congruity emerges, leaving us with the not illogical and indeed entirely sensible understanding that, in Heath, a digital sign is a type of sign, whereas a digital billboard is a type of billboard. And the distinction between digital signs and digital billboards is the size: digital signs can be as large as 100 square feet, whereas digital billboards cover more than 100 square feet but no more than 378 square feet.

**{¶50}** In contrast to the majority's view that "all digital signs are digital billboards," I read the ordinances to say just the opposite: no digital sign is a digital billboard, and no digital billboard is a digital sign. My view is correct, I believe, because digital signs are, by definition, always smaller than any billboards (including, I believe, digital billboards).

**{¶51}** And if the reader embraces that understanding of the ordinances, then the location restriction at the heart of this case makes perfect sense. Why would the City of Heath allow digital signs nearly "everywhere" — as Heath Cod.Ord. 1187.10(b)(2)(B)(4) says – while restricting billboards (including, I believe, digital billboards) to just one zoning

district, as Heath Cod.Ord. 1187.10(h)(2) does?  Isn't it obvious?  Billboards (including digital billboards) are big, whereas digital signs are small.  And as the "Purpose and Intent" section for Chapter 1187 of Heath's Codified Ordinances explains, the city's signage regulations are intended, at least in part, to protect the public "from distractions and obstructions that can contribute to traffic and pedestrian accidents."  Heath Cod.Ord. 1187.01.  Big signs — which in Heath are defined as "billboards" — are more distracting to drivers, perhaps more bothersome to neighbors, and in some places can reduce the value of nearby land and lessen the natural beauty of rural areas.

{¶52}  Because I read the ordinances' sign provisions to say that a digital billboard is a type of billboard — which, again, is a reading that is not inconsistent with any provision of the text and is, in my view, entirely consistent with our ordinary understanding of words and consistent with the design and structure of the city's sign ordinances as a whole — I conclude that Heath Cod.Ord. 1187.10(h)(2)'s location restriction for billboards governs the proposed digital billboard at issue in this case.  Heath, under that provision, permits billboards "only in M-2 [zoning] Districts," and given that the proposed digital billboard would be installed in a B-3 district, I believe that the Board of Zoning Appeals properly denied the proposal.  Because the majority — like the trial court — reads the ordinances at issue differently, I dissent.